Next case up this afternoon is 412-0957, DeMambro v. City of Springfield, for the appellee is, or the appellant rather, is Paul Ademeye. Pronounce correctly? Absolutely. A lucky guess. And for the appellee is Jeanette Wittendorf? Yes, sir. Okay. I want to begin by thanking counsel. We request that you be here early. You are. It gives us a chance to start early, so thank you. You may proceed, Mr. Ademeye. Hopefully your home will be a little early. Yes. May it please the court. On this summer-like day, the facts are fairly simple. In fact, the city has admitted that my client, Laura DeMambro, was legally parked on Herndon in front of her car. There was undisputed evidence, really, that she was legally parked, and the city admitted both in its brief before this court as well as in the memorandum in support of a motion for submarine judgment that she was legally parked. The standard, of course, that we're dealing here with today on a submarine judgment motion is that the city must establish that there is no genuine issue of any material fact, and the off-stated rule is that it's a drastic remedy, and that the material submitted by the movement is to be strictly extruded. The Tort Immunity Act also places the burden on the city to establish its immunity, and the act is to be strictly extruded. I think the law is also fairly clear in this case, starting with the Appellate Court case in D. Domenico, followed by the Supreme Court in Curitola and Olchidilla, that if a vehicle is legally parked on a street, that the pedestrian entering and exiting their vehicle in the immediate area of the vehicle, as the facts undoubtedly and indisputably show here of Laura DeMombro, was attempting to enter her vehicle on the day after, putting some things in the rear seat. She walked around to the rear of her vehicle and entered then on the driver's side on the left side. So she was an intended and permitted user, and thus... By the way, excuse me, counsel, I should have mentioned at the beginning, and I apologize, I forgot, the city had submitted supplemental authority of this new decision, and the court has considered it will grant the motion, so I'm sure this comes as no surprise to you. I understood. In fact, I was going to discuss it. Yeah, so please feel free to do that as you may as well, counsel. I apologize for not mentioning that at the beginning. Not a problem. We understood that the court would do that. Please continue. So, as I said, the Supreme Court has approved of the holding in DiDomenico in different fact situations, but basically approving the decision whereby the city is not immune because persons who legally park their vehicles and are in the immediate area of that vehicle are protected and the city has the duty of ordinary care. There are some other cases out there. Jorgensen involved loading baggage on a bus. They also held she was a permitted user. But the Curitola and Wojdyla cases are perhaps more on point because they involved a pedestrian involving a legally parked car. In fact, in Curitola it was a truck that was legally parked, although in Wajahola they found that there was not an intended and permitted use because the pedestrian was outside the crosswalk. But nevertheless, it approved the holding of DiDomenico that if the facts were different and the pedestrian was exiting their vehicle legally parked, there would be no immunity. So I think that's fairly clear. But the state, or rather the city, has raised issues of open and obvious. The plaintiff in this case believes that that is a fact question and not a question law appropriate for a motion for assembly judgment. The city was filling potholes, as Ms. DiMombro said in her deposition, shortly before the incident. She felt that the potholes were all filled on her street as the street was blocked off and she couldn't even park there for some period of time because the city was filling all the potholes on this relatively short street between the medical buildings and Walnut Street to the west so that on the day of the accident she was expecting that the pothole right in front of her house was filled as well. But apparently, for one reason or another, the city neglected, after filling all the other potholes on the street, to fill the pothole right in front of her. Also, the incident occurred at 9 p.m. She testified that it was dark, so we would submit that this was not an open and obvious condition as a matter of law, both because of the darkness she couldn't see and also because she expected the pothole to be filled. If the court, however, nevertheless finds that this is an open and obvious as a matter of law, we would submit again the same facts about the plaintiff, in this case, expecting that the pothole was filled. She was looking at her car, loading it, and thus she was distracted. The city has also raised this issue of de minimis. Cases cited, however, involve sidewalk cracks, and this court in Gillick, by Judge Cook's opinion, held there is, in fact, a right-line rule of 2 inches in any event. The evidence in this case was Mr. Crane thought the pothole was 6 inches. She thought it was 2 to 3 inches. But in any way, we do not believe the de minimis rule would apply in this case. And I further note that I think stepping in a pothole is more likely to fall than tripping on a crack, a matter of physics, I believe. So for those reasons, we are asking the court to reverse and remand this case to the circuit court for trial. Okay. Thank you, counsel. Ms. Wittendorf? May it please the court? Counsel? Counsel, Your Honor, my name is Jeanette Wittendorf, and I represent the defendant at Pelee City of Springfield, Illinois. The plaintiff, in her alleging negligence, must establish that the defendant owed a duty of care to the plaintiff. The determination of whether a defendant owes a duty of care to a plaintiff is a question of law, that is decided by the court and may be appropriately decided by a motion for summary judgment. The defendant is entitled to a summary judgment as a matter of law where the court finds that the defendant did not owe a duty of care to the plaintiff. Your Honor, a duty will not be imposed on a municipality unless the plaintiff is both a legally permitted user and an intended user of a property. According to Bob v. Township of Wayne, Section 3102 of the Local Government and Governmental Employees Torts Immunity Act makes clear that the intent of the municipality is controlling. Your Honor, the plaintiff argues that because many of the controlling cases are not on point regarding the facts, they should therefore not be finding authority in this case. However, that would disavow the very basis for which those same cases were decided. Facts do not change principles of law. Those cases, as ours, follow the history of the law as it is developed and pertains to the Local Government and Governmental Employees Torts Immunity Act, Section 3-102. The plaintiff centers their entire case on Di Domencio v. The Village of Romeoville, a 3rd District 1988 case whose very broad strokes has since been very much curtailed by several Illinois Supreme Court cases, starting in 1992 with Wedelia v. The City of Park Ridge, in which the Illinois Supreme Court's ruling centered on the use of parking lanes. In coming to their holding, I quote, parking lanes are set out according to painted blocks on the pavement, signs or meters on the sidewalk or parkway, or painted markings on the curb. Following that case came Coratolia v. Village of Niles in 1993, in which stated in their holding, any duty to maintain the street area immediately around a lawfully parked vehicle for those exiting and entering will be bounded by the parameters of parking lanes. In 1995, Sist v. Williamson County upheld these same principles of law by citing them and stating, the signs, meters, and pavement markings which designate parking spaces are clear manifestations of the intent that people park their vehicles as well as enter and exit their vehicles in such areas. Counsel, let me ask you, so in this situation, is it correct that the plaintiff was legally parked? That is correct, Your Honor, the plaintiff was. And so are you suggesting that it was inappropriate for her to use the area immediately around her vehicle to access and exit her vehicle? The plaintiff was entirely permitted to use the area. The plaintiff was not an intended user of the area. And so you're saying that the law is that it's not intended for a person to enter and exit their vehicle around the immediate area of their vehicle? The street pursuant to the municipality's intent is not intended to be used for parking. Therefore, the plaintiff is not intended to be a user of the street, no, Your Honor. She is permitted to park there and therefore permitted to walk in the area. However, she is not intended to park there and therefore not intended to be a user of the street. And how do you square that with the Curatola case, which involved a person exiting the rear of their parked truck and twisted the foot on the edge of a pothole? I square that in the fact that Curatola in their holdings specifically stated that any duty to maintain the street area around a lawfully parked vehicle for those exiting and entering them will be bounded by the parameters of parking lanes. There are no parking lanes on said street indicating the intent that it be used for parking. So you're saying that unless there's a parking lane, then there's never a duty? Unless there is a manifestation of the city's intent that it be used for parking, there is no duty, no, Your Honor. Did the Supreme Court overrule the Domenico? They have not. We are expressing our opinion that the Supreme Court rulings have curtailed it. What part of Domenico is not binding on this, but why shouldn't we adopt it? Due to the Illinois Supreme Court cases which are binding on this court regarding the parameters on which this court should look at to look at the intent upon which the municipality is looking at the street's use. For which we look at the 1995 CIS case, which further stated, Your Honors, to determine a municipality's intent, it is necessary to look at pavement markings, signs, and other physical manifestations of the intended use of the property. And that is a binding authority upon this court, unlike the 3rd District 1988 case. And in the CIS case, this was a pedestrian who fell from a bridge, right? Yes, Your Honor. Into a creek bed. So you had a person basically walking on a road, not someone accessing their vehicle. And once again, Your Honor, this is where the plaintiff is attempting to distinguish each case upon its facts. However, these are principles of law that each case cites upon the other to attempt to carry forth the principles of law that are in the rules of law applicable to 3-102 of the Local Government and Governmental Employees Toward Immunity Act. And CIS was in fact of utmost importance to these principles of law in that it clarified that an intended user of property is by definition also a permitted user. However, a permitted user of property is not necessarily an intended user. And that is the distinction in this case. Again, this was furthered in 1998 by the Supreme Court in Bob, who reiterated the distinction between intended and permitted use. And found no affirmative manifestations that the township intended rather than simply permitted bicyclists to use the road and bridge where the accident occurred. Again, we have a fact distinction in that case. This was a bicycle case, not a pedestrian case. However, the principles of law carried regarding Section 3-102. Bob cited CIS and stated that physical manifestations include both the presence or absence of special pavement markings and signs. These principles of law were… The absence of a sign that would say no parking. Correct, Your Honor. The absence of such a sign would suggest to the ordinary reasonable person that they could park there. And they're permitted to park there. And the city does not make it unlawful for them to park there. And the city provides space for them to park there. Otherwise, they would be obstructing traffic. Why aren't they intended to park there if the city permits them to, acquiesces in it, doesn't forbid them to, doesn't make it unlawful, doesn't put up a sign that says no parking? Isn't that a manifestation of the city's intent as well? Not necessarily. Those issues were addressed in Latimer. The fact that parking is prohibited in one area doesn't necessarily mean it's permitted in another. So it's like, when you put up a sign that says prohibited, we really mean it in this spot. But somewhere else, we're not going to pay too much attention to it.  The burden of placing signs all throughout the city where we really mean no parking would be a high burden on the city, just as the burden of maintaining each and every roadway for pedestrians where we permit versus where we intend to allow them to traverse. Just like any roadway in the city of Springfield, Your Honor, pedestrians are clearly allowed, permitted to walk upon the streets. It's not against the law. Sure it is, you can't jaywalk. That is true, Your Honor. If you don't cross in the crosswalk, you're violating the law. And that would be part of the public policy for saying, you really can't complain about the pothole. If you're worried about potholes, go down to the crosswalk, the city maintains that. In fact, counsel, I mean, that's the general rule, right? There's no duty to pedestrians outside the crosswalk. But Curatola established an exception in that there is an exception for people who are legally parked and using the area around the vehicle to access their vehicle, to enter and exit their vehicle. And once again, Your Honor, I will point out, Curatola based it on a vehicle bounded by parameters of parking lane. Would the decision have been different in Curatola if those parking lanes weren't there? Pursuant to the decisions in Sisk and Bob, it appears that the Illinois Supreme Court has been very consistent in only placing the burden upon the municipalities when it has made an affirmative manifestation based on parking lanes, based on meters, based on markings. It has not placed that burden outside of the Third District 1998 appellate court case. The Illinois Supreme Court has not placed that burden outside the parameters of a marked indication. In this case, there is no marked indication that it is allowed. There was no marked parking. There was no meters. There was nothing to show an intent that parking was permitted, thereby making the plaintiff an intended user. By arguing that a use must be intended solely because it is a permitted use, plaintiff would erase any distinction between permitted and intended uses. And that is the importance of this case. Even though the Supreme Court has emphasized that a plaintiff's use must meet both criteria in order to fit within Section 3102 of the Act. The plaintiff also cited the Gustine v. City of Evanston case. However, Your Honors will note that in that case the plaintiff was forced to use the city property via city ordinance. And that's the only basis upon which the appellate court was able to find the intent in that case. This was a stairwell use. The Gustine v. City of Evanston was the alleyway use. City of Evanston? Okay. I thought you were referring to Gustine v. City of Danville. Thank you. I apologize, Your Honor. This is the 1st District, 2010. And the court stated, The policy expressly states that the city will not pick up the refuse from private property unless the residents use the city property. Therefore, on that basis, in this case, there is no such policy that the residents must park on the city street. The test put forth by the plaintiff is one of legality. But that is not the test being put forth by the Illinois Supreme Court. The test being put forth by the Illinois Supreme Court, which is binding, is one of intent. Next, Your Honor, we do have the issue of open and obvious. And the law contrary is when there is no dispute about the physical nature of the condition. Whether the condition is open and obvious is, in fact, a question of law. And that has been… You raised that issue below, but the trial court didn't address it in deciding this case. Isn't that correct? That is correct, Your Honor. And Your Honor does have the discretion to address any issues that were raised. We can affirm on any basis, but if we were to agree with Mr. Ademaye that the court was wrong on the basis of the decision of Runder, and the Port Immunity Act, why shouldn't we have the court address this argument in the first instance before we do? Your Honor… Well, it wasn't a rhetorical question. But it seems to me you're looking at a bench here of well over three decades of trial court experience. And I'm always partial to having the trial judge give us the benefit of his or her thoughts on a particular issue before we delve into it in the cold record. Thank you, Your Honor. In that case, I will then address the de minimis issue. Perfect. In regards to the de minimis issue, Your Honor, I will state that this honorable court has been in line with the line of cases that has held that the difference in the level between two concrete slabs being less than two inches, such a defect is de minimis and therefore not actionable. The very day after her fall, the plaintiff's own son, Nico de Mambro, describes how he, his dad, and his brother brought out the wood stick and measuring tape to take the pictures of the pothole. And as the court can clearly see from the plaintiff's own exhibit, the photographs provided in the Defendant of Police Appendix A102-103, the bottom of the plank used, which would denote the top of the pothole, falls far below the two-inch markings on the ruler used by the plaintiff's family. And I understand the plaintiff attempts to distinguish this as a street versus a sidewalk. But once again, Your Honor, what we have here is a principle of law. This isn't a matter that you can take a principle of law and take it outside the scope of the facts. The fact that this hasn't been applied to a deviation in the street doesn't make the principle of law any more or less applicable. I would argue that based on the picture, which pursuant to the appellate court case of Balog versus the City of Chicago, in which the appellate court case in that case used a picture as clear demonstrative evidence and made their ruling of the question of law this positive, I would ask that this court also use the picture as clear demonstrative evidence, in this case a picture provided by the plaintiff herself, that this clearly falls far beneath the two-inch de minimis rule. I will stand on my brief as to any points not orally argued and ask that this honorable court affirm the order of the circuit court. Does the court have any further questions? Seeing none, thank you. Thank you, Your Honor. Mr. Ademaye, anything further, sir? Please, I'll be brief. Okay. Despite the discussion from the city today about parking lanes and whatnot, they admitted in this brief for this court, as well as in the motion for summary judgment, that Ms. DeMombro was legally parked. So once we get over that hurdle, the only question was, was she then exiting or entering the immediate area of her vehicle? Undisputed that she was. She put something in the back seat, walked around the back, headed toward the driver's seat, but fell at the pothole on the way. So I think that disposes of that. And I quote from Lojilla that it states on page 425 of the official report, a person entering and exiting his vehicle is an intended user of the space around his car. And Curitola likewise said that a permitted intended use around the immediate area of a legally parked car means that they are, in fact, intended and permitted. So I believe that resolves that question simply put. I told the court I wouldn't address Donnett even though the city didn't. Basically, Donnett followed facts where someone was not legally parked, but the court stated in its opinion, again, the general rule that if you are legally parked and are entering and exiting that vehicle, the city is not immune, but because of the facts of that case, in fact, she was walking apparently in an unmarked crosswalk somewhere in the city of Chicago, but apparently you couldn't walk across the intersection where she was located. She had to walk a block down before she could walk across. Well, she didn't want to walk that block down. She just got across at the intersection. Unmarked crosswalk, sorry, you lose. Those were the facts of that case. Briefly, also, there was this discussion of CISC. That poor soul ran into the bridge on some road. Obviously, he wasn't legally parked. He ran into the bridge, and to make matters worse for this poor soul, he then fell off the bridge down below. So he was not in a parked area, but rather he just happened to hit a bridge and fall off the bridge. I would finally submit that the burden is on the city to prove that she was not legally parked. The city has admitted that she was legally parked, and I think that's the end of that matter. I really have nothing really further to add about, open and obvious and de minimis, from what my remarks were in the initial argument. So for those reasons, we would ask for your mercy. Thank you, counsel. We'll take this matter in an advisory meeting at recess until tomorrow morning.